Kelly I. Beeman
Attorney at Law
BEEMAN LAW OFFICES
708 ½ W. Franklin Street
Boise, ID  83702
Telephone:  (208) 345-3045
Facsimile: (208) 345-2890
ISB # 1807

Attorney for Plaintiff – *Rebecca Peterson*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REBECCA PETERSON,<br><br>              Plaintiff,<br><br>v.<br><br>CITIFINANCIAL MORTGAGE COMPANY, INC., formerly a New York corporation; CITIMORTGAGE, INC., a New York corporation; and CASHCALL, INC., a California corporation,<br><br>              Defendants. | Case No.<br><br>CIVIL COMPLAINT |

Plaintiff, REBECCA PETERSON, brings this action to challenge Defendants'

abusive, deceptive, unfair, fraudulent, harassing, and unlawful debt collections

practices.  Ms. Peterson seeks declaratory relief, actual damages, statutory damages,

punitive damages, and attorney's fees and costs.

CIVIL COMPLAINT - 1

## JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over this action pursuant to and by virtue of 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and other applicable laws and rules of the U.S. District Court in and for the State of Idaho.

2.      The Court has supplemental jurisdiction under 28 U.S.C. § 1367.

3.      Declaratory relief is available under 28 U.S.C. § 2201 and § 2202.

4.      The Court has personal jurisdiction over Citifinancial Mortgage Company, Inc., and Citimortgage, Inc., pursuant to and by virtue of 15 U.S.C. § 1692k(d).

5.      The Court has personal jurisdiction over CashCall, Inc., pursuant to and by virtue of 15 U.S.C. § 1692k(d).

6.      Venue is proper in this district pursuant to 18 U.S.C. § 1391(b) as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

7.      Venue also is proper in this district since Defendants can be found, have agents, and/or transact business in this district.  Furthermore, the deceptive communications were transmitted into Ada County, Idaho.

8.      Finally, venue is proper in this district pursuant to 15 U.S.C. § 1692k(d) as Ms. Peterson's residence is located in this district and this district is the nearest location of the U.S. District Court in and for the State of Idaho.

## PARTIES

9.      At all times relevant hereto, Ms. Peterson was a resident of Boise, Ada County, Idaho, and is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

10.    Defendant Citifinancial Mortgage Company, Inc. changed the character of its business organization during the relevant time period.  Up until on or about July 2006, Citifinancial Mortgage Company, Inc., was a New York corporation doing business in the State of Idaho, whose principal place of business was Dallas, Texas. On or about July 2006, Citifinancial Mortgage Company, Inc. surrendered the right to do business in the state of Idaho.  However, immediately thereafter, on or about August 2006, Citimortgage, Inc., a New York corporation, applied and obtained a certificate of assumed business name, allowing it to conduct business in the state of Idaho as Citifinancial Mortgage Company, Inc.  Citifinancial Mortgage Company, Inc., the corporation, and Citimortgage, Inc., d/b/a as Citifinancial Mortgage Company, Inc., will be referred to collectively as "Citifinancial."

11.    At all times relevant hereto, defendant CashCall, Inc. ("CashCall"), was a California corporation doing business in the State of Idaho, whose principal place of business is Irvine, California.

## FACTUAL ALLEGATIONS

12.    Prior to August 2004, Ms. Peterson obtained a home mortgage loan through Ameriquest Mortgage ("Ameriquest").

13.    On or about August 2004, Ameriquest sold Ms. Peterson's mortgage to Citifinancial.

14.    In early 2006, Ms. Peterson encountered financial difficulties and fell behind on her monthly payments to Citifinancial.

15.    At that time, Ms. Peterson's payment on the Citifinancial mortgage was $770.32.

CIVIL COMPLAINT - 3

16.     In an attempt to cure this delinquency, Ms. Peterson obtained a short term loan from CashCall in the amount of $2,500.00, and used those funds to bring current her obligation to Citifinancial.

17.     Under the terms of the loan with CashCall, Ms. Peterson was required to make monthly payments in the amount of $216.00.

18.     Ms. Peterson's financial situation did not, however, improve and, as a result, she soon found herself delinquent on both her Citifinancial loan and her CashCall loan.

19.     Ms. Peterson therefore began the process of refinancing her home, which would allow her to pay in full her obligation to both Citifinancial and CashCall.

20.     As a part of this refinance effort, in September 2006, Ms. Peterson contacted Citifinancial on at least four separate occasions and requested the payoff amount and payment history on her Citifinancial loan.

21.     Each time Ms. Peterson made this request to Citifinancial, she was informed by Citifinancial that $15.00 would be charged to her account; that a faxed response to her request would take twenty-four to forty-eight hours; and that a mailed response to her request would take five to seven days.

22.     On each of the occasions that she contacted Citifinancial for payoff and payment history, Ms. Peterson requested that Citifinancial provide the response to her request for information by fax, and provided to Citifinancial the fax number for Bill Turner at Home Mortgage Resources, with whom Ms. Peterson had been working to obtain a refinance loan.

CIVIL COMPLAINT - 4

23.     Two to three weeks after Ms. Peterson first requested from Citifinancial the payoff amount and payment history for her loan, and after four separate requests had been made by Ms. Peterson to Citifinancial for this information, Ms. Peterson still had no response, let alone the requested information.

24.     In fact, Citifinancial did not ever respond to Ms. Peterson's requests for a payoff amount with accurate and valid information.

25.     During her last telephone call with Citifinancial, on or about September 22, 2006, during which Ms. Peterson once again attempted to obtain the payoff amount on her Citifinancial loan, Ms. Peterson was told, by an individual who identified himself as "Mr. Pi," that Citifinancial would not accept any payout amount from her and that Citifinancial "would refuse any payment" that it received.

26.     As a part of this refinance effort, Ms. Peterson also contacted CashCall on at least five separate occasions and requested the payoff amount on her CashCall loan.

27.     CashCall did not respond to Ms. Peterson's requests for a payoff amount with accurate and valid information.

28.     Ms. Peterson also sent an email to CashCall requesting a payoff amount but never received a response.

29.     At one point, Ms. Peterson spoke with an individual at CashCall and gave that individual Bill Turner's contact information, including his fax number, and requested that CashCall fax the payoff information directly to Mr. Turner.  No response to Ms. Peterson's request was received.

CIVIL COMPLAINT - 5

30.     After Ms. Peterson was unsuccessful in her attempts to obtain valid and accurate payoff information from either Citifinancial or CashCall, Mr. Turner attempted to obtain the information.

31.     Mr. Turner contacted Citifinancial on at least two different occasions in an attempt to obtain valid and accurate payoff information for Ms. Peterson's loan.

32.     During these contacts, Citifinancial refused or failed to provide Mr. Turner with the requested payoff information.

33.     Mr. Turner also contacted CashCall on numerous occasions in an attempt to obtain payoff information on Ms. Peterson's loan.

34.     CashCall refused or failed to respond to Mr. Turner's requests for payoff information.

35.     The closing of Ms. Peterson's refinance loan was being handled by Stewart Title.

36.     Because both Ms. Peterson and Mr. Turner had been unable to obtain a payoff amount from Citifinancial, Stewart Title contacted Citifinancial and requested payoff information on Ms. Peterson's loan

37.     On September 21, 2006, Stewart Title received a statement from Citifinancial which provided a payoff of 108,291.63 for an October 2, 2006, payoff.

38.     Subsequently, Stewart Title again contacted Citifinancial for a payoff amount through October 6, 2006, and was provided a payoff amount of $108.405.24 for an October 6, 2006, payoff.

39.     On October 2, 2006, an individual who refused to identify herself, other than to state that she was calling from CashCall, contacted Mr. Turner by telephone and

CIVIL COMPLAINT - 6

asked Mr. Turner whether Ms. Peterson was refinancing her home and intended to pay off CashCall.

40.     Mr. Turner told this individual that because he could not confirm who she was or where she was calling from, he could neither confirm nor deny anything regarding a customer of his.

41.     This individual stated that she was from CashCall and that Ms. Peterson owed them $2532.00.

42.     This individual further asked when the payoff would be sent.

43.     Mr. Turner again informed this individual that he could not disclose that information to her, but that she could contact Ms. Peterson directly.

44.     Mr. Turner did, however, thank this individual for confirming the amount owed because CashCall previously had not responded to his payoff requests.

45.     On October 4, 2006, Ms. Peterson's refinance loan was closed by Stewart Title.

46.     In reliance upon the payoff amounts finally obtained from Citifinancial and CashCall on Ms. Peterson's loans, Stewart Title sent to Citifinancial funds in the amount of $108,405.24, the exact amount of the payoff amount that Citifinancial had provided to Stewart Title for a payoff by October 6, 2006.

47.     Citifinancial received these funds, and acknowledged that Ms. Peterson's account was paid in full as demonstrated by the statement issued by Citifinancial on Ms. Peterson's loan.

48.     This statement, which is dated October 5, 2006, shows "paid in full" and indicates that $28.40 was either over paid or had not been applied.

CIVIL COMPLAINT - 7

49.     Despite Ms. Peterson's payment in full of the payoff amount provided to Stewart Title by Citifinancial and Citifinancial's acknowledgement that Ms. Peterson's account was "paid in full," Citifinancial subsequently refused to cash the check sent to Citifinancial for the payoff of Ms. Peterson's loan.

50.     Although Citifinancial finally did, on October 25, 2006, cash the payoff check, Citifinancial continued to seek payment by Ms. Peterson of amounts above and beyond the payoff amount provided by Citifinancial to Stewart Title.

51.     For example, on October 5, 2006, the same date on which Citifinancial indicated that Ms. Peterson's obligation had been paid in full, Citifinancial executed a Notice of Default and Election to Sell Under Dead of Trust.  This document appears to have been recorded on October 6, 2006.

52.     Citifinancial also contacted Ms. Peterson through a "Wire Alert" dated October 18, 2006, stating that "the mortgage payment on your account is now past due."  This Wire Alert is dated thirteen (13) days after Citifinancial had been tendered the payoff amount provided by Citifinancial and Citifinancial, according to its own records, had stated that Ms. Peterson's loan was "paid in full."

53.     Also on October 18, 2006, Citifinancial executed a Notice of Trustee's Sale, stating that the debtor, Ms. Peterson, was in default on her loan.  This notice listed a sale date of February 16, 2007.

54.     Ms. Peterson received eight separate Notices of Trustee's Sale, each with a postmark date of October 19, 2006.

55.     Ms. Peterson has received, as a result of Citifinancial's Notice of Trustee's Sale, three separate postcards titled "Notice of HUD Rights"; a letter from Argent

CIVIL COMPLAINT - 8

Mortgage, informing Ms. Peterson that it was authorized to offer her a "Special New Low Payment Financing Program"; an "Information Pack" dated November 29, 2006, from an individual who identified himself as "Dave Schumacker, Trustee" regarding Ms. Peterson's upcoming "foreclosure."

56.     Ms. Peterson also has received numerous telephone calls from Citifinancial, the sole purpose of which have been to harass and inflict abuse upon Ms. Peterson.

57.     As to the calls she received prior to October 5, 2006, Ms. Peterson repeatedly advised Citifinancial, during these phone calls, that she was aware that she had fallen behind on her payments and that she was intending to refinance to take care of these delinquencies.

58.     Many of these phone calls from Citifinancial were received by Ms. Peterson before 8 o'clock antemeridian and after 9 o'clock postmeridian.

59.     During these phone calls, Ms. Peterson pointed out to the Citifinancial employees that these telephone calls were being made outside the allowable time frame and requested that these telephone calls cease.

60.     On or about September 27, 2006, Mr. Kelly I. Beeman, Ms. Peterson's attorney, contacted Citifinancial by telephone and by letter and informed Citifinancial that he represented Ms. Peterson in relation to the home loan she had with Citifinancial.

61.     On or about mid-October 2006, Ms. Peterson and/or her son, informed CashCall that Ms. Peterson was represented by Mr. Beeman, provided CashCall with Mr. Beeman's contact information, and directed CashCall that all further contact had to

CIVIL COMPLAINT - 9

go through Mr. Beeman.

62.     Despite having been informed that Ms. Peterson was represented by counsel, both Citifinancial and CashCall continued to directly contact Ms. Peterson.

63.     For example, after September 27, 2006, Ms. Peterson received a call from an individual who represented himself to be "Josh" at Citifinancial.  Josh indicated that he could be reached at 877-779-8058, ext 52223.

64.     As another example, on or about late October through mid-November 2006, CashCall repeatedly contacted Ms. Peterson and her son, Raymond Peterson, through telephone calls and email.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF 15 U.S.C. § 1692c

65.     Ms. Peterson repeats, realleges, and incorporates by reference paragraphs 1 through 64 above as if fully set forth herein.

66.     Ms. Peterson is a "consumer as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3).

67.     Defendants are "debt collectors" as that term is described by the FDCPA, 15 U.S.C. § 1692a(6).

68.     The financial obligation that allegedly was owed to Citifinancial by Ms. Peterson is a "debt" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5).

69.     The financial obligation that allegedly was owed to CashCall by Ms. Peterson is a "debt" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5).

70.     Citifinancial violated 15 U.S.C. § 1692c(a)(1) by repeatedly and continuously contacting Ms. Peterson before 8 o'clock antemeridian and/or after 9

CIVIL COMPLAINT - 10

o'clock postmeridian even though Ms. Peterson did not consent to Citifinancial doing so, even though no court of competent jurisdiction had given Citifinancial permission to do so, and even though Citifinancial had no information to indicate that it was convenient for Ms. Peterson to be contacted before 8 o'clock antemeridian and/or after 9 o'clock postmeridian.

71.     In fact, Citifinancial had been informed by Ms. Peterson, on numerous occasions, that she did not want to be contacted during the hours before 8 o'clock antemeridian or after 9 o'clock postmeridian, and that Citifinancial needed to stop contacting her during those hours.

72.     Citifinancial violated 15 U.S.C. § 1692c(a)(2) by continuing to directly communicate with Ms. Peterson after Citifinancial knew that Ms. Peterson was represented by an attorney with respect to Ms. Peterson's alleged debt with Citifinancial and after Citifinancial had knowledge of, or could readily ascertain, such attorney's name and address and where Ms. Peterson's attorney responded to all communications from Citifinancial within a reasonable period of time and did not consent to Citifinancial's direct communication with Ms. Peterson.

73.     Specifically, on or about September 27, 2006, Mr. Beeman contacted Citifinancial and informed them that he represented Ms. Peterson.  Yet, Citifinancial continued after this date to directly contact Ms. Peterson regarding the alleged debt owed to Citifinanacial.

74.     Ms. Peterson's counsel did not authorize Citifinancial to have such direct communication.

75.     On or about September 27, 2006, Mr. Beeman also contacted CashCall

CIVIL COMPLAINT - 11

and informed them that he represented Ms. Peterson.  Yet, CashCall continued after

this date to directly contact Ms. Peterson regarding the alleged debt owed to

CashCall.

76.     Ms. Peterson's counsel did not authorize CashCall to have such direct

communication.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF 15 U.S.C. § 1692d

77.     Ms. Peterson repeats, realleges, and incorporates by reference

paragraphs 1 through 76 above as if fully set forth herein.

78.     Citifinancial violated 15 U.S.C. § 1692d by refusing to give Ms. Peterson

and/or her loan officer, Mr. Turner, payoff information for Ms. Peterson's loan with

Citifinancial despite repeated requests for such information and where the natural

consequence of refusing to provide the requested information was to harass, oppress,

or abuse Ms. Peterson in connection with the collection of a debt.

79.     CashCall violated 15 U.S.C. § 1692d by refusing to give Ms. Peterson

and/or her loan officer, Mr. Turner, payoff information for Ms. Peterson's loan with

CashCall despite repeated requests for such information and where the natural

consequence of refusing to provide the requested information was to harass, oppress,

or abuse Ms. Peterson in connection with the collection of a debt.

80.     Citifinancial violated 15 U.S.C. § 1692d by informing Ms. Peterson that it

"would refuse any payment" that it received on Ms. Peterson's loan and where the

natural consequences of so informing Ms. Peterson was to harass, oppress, or abuse

Ms. Peterson in connection with the collection of a debt.

CIVIL COMPLAINT - 12

81.     Citifinancial violated 15 U.S.C. § 1692d(5) by repeatedly and/or continuously causing Ms. Peterson's telephone to ring and/or repeatedly and/or continuously engaging any person in telephone conversation, with the intent to annoy, abuse, or harass Ms. Peterson and her family at the called number.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF 15 U.S.C. § 1692e

82.     Ms. Peterson repeats, realleges, and incorporates by reference paragraphs 1 through 81 above as if fully set forth herein.

83.     Both Citifinancial and CashCall violated 15 U.S.C. § 1692e by making false, deceptive, and/or misleading representations to Ms. Peterson and/or her son to collect or attempt to collect the debt alleged to have been owed by Ms. Peterson.

84.     For example, both Citifinancial and CashCall falsely represented the amount of the debt Ms. Peterson owed.

85.     Citifinancial falsely represented that the status and character of Ms. Peterson's debt to Citifinancial was such that it had the authority to "refuse any payment" that Ms. Peterson submitted to Citifinancial.

86.     Citifinancial represented or implicated that the nonpayment of the additional debt Citifinancial alleged was owed by Ms. Peterson, after payment in full had been tendered to Citifinancial by Ms. Peterson through Stewart Title, would result in the sale of Ms. Peterson's home when such sale would have been unlawful and/or when Citifinancial did not intend to take such action.

CIVIL COMPLAINT - 13

87.     Citifinancial threatened Ms. Peterson that it "would refuse any payment" that it received from Ms. Peterson when it could not legally take such action and/or did not intent to take such action.

88.     Citifinancial falsely represented to Ms. Peterson that it would sell her home, even after she had tendered payment in full through Stewart Title, if she did not pay to Citifinancial an amount above and beyond the payoff amount.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF 15 U.S.C. § 1692f

89.     Ms. Peterson repeats, realleges, and incorporates by reference paragraphs 1 through 88 above as if fully set forth herein.

90.     Citifinancial violated 15 U.S.C. § 1692f by attempting to collect from Ms. Peterson interest, fees, charges and/or expenses which were neither expressly authorized by the agreement creating the debt nor permitted by law.

91.     Citifinancial also violated 15 U.S.C. § 1692f by taking and/or threatening to take the nonjudicial action of foreclosure to effect dispossession of Ms. Peterson's home when there was no present right to take foreclosure action to effect such dispossession and/or there was no present intention by Citifinancial to take possession of Ms. Peterson's property.

92.     CashCall violated 15 U.S.C. § 1692f by attempting to collect from Ms. Peterson interest, fees, charges and/or expenses which were neither expressly authorized by the agreement creating the debt nor permitted by law.

CIVIL COMPLAINT - 14

**FIFTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

93.    Ms. Peterson repeats, realleges, and incorporates by reference paragraphs 1 through 92 above as if fully set forth herein.

94.    The defendants' conduct was extreme and outrageous.

95.    The defendants engaged in this conduct either intentionally or recklessly; and the defendants' conduct proximately caused Ms. Peterson severe emotional distress.

**SIXTH CLAIM FOR RELIEF**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

96.    Ms. Peterson repeats, realleges, and incorporates by reference paragraphs 1 through 95 above as if fully set forth herein.

97.    The defendant's conduct was extreme and outrageous; the defendants engaged in this conduct negligently; and the defendants' conduct proximately caused Ms. Peterson severe emotional distress which resulted in physical manifestations of insomnia, stress-related head aches, and increased blood pressure.

**SEVENTH CLAIM FOR RELIEF**
**SLANDER OF TITLE**

98.    Ms. Peterson repeats, realleges, and incorporates by reference paragraphs 1 through 97 above as if fully set forth herein.

99.    Citifinancial published the slanderous statement that Ms. Peterson's home was going into foreclosure and was in default.

100.    Citifinancial's statement was false because Ms. Peterson had paid her loan in full.

CIVIL COMPLAINT - 15

101.    Citifinancial made this statement with malice.

102.    Ms. Peterson suffered damages, including extreme emotional distress, insomnia, stress-related head aches, increased blood pressure, and loss of reputation.


## DEMAND FOR JURY TRIAL

Please take notice that Ms. Peterson hereby demands a trial by jury of all triable issues of fact in the above-captioned case.

## REQUEST FOR RELIEF

WHEREFORE, Ms. Peterson prays this Court enter a Judgment against Citifinancial and CashCall as follows:

a.    For a declaration that Citifinancial and CashCall violated the Fair Debt Collection Practices Act and that the actions of the Defendants shock the conscience of this Court;

b.    For actual, statutory and additional damages for Citifinancial's and CashCall's violations of the FDCPA in accordance with the provisions of 15 U.S.C. § 1692k and any other applicable federal and state laws in an amount to be determined at trial;

c.    For any additional damages against Citifinancial and CashCall as the Court may allow to be determined at trial for Citifinancial's and CashCall's infliction of emotional distress;

d.    For the costs of this action and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k and any other applicable federal and state laws; and

e.      For such other and further relief as the Court deems just and equitable

and to which Ms. Peterson is entitled.

DATED this 24th day of April, 2007.

__/s/_____

Kelly I. Beeman
Attorney for Plaintiff

STATE OF IDAHO   )
                           ) ss
County of Ada       )

I, REBECCA PETERSON, being first duly sworn on oath, deposes and states
as follows:

That I am the Plaintiff in the foregoing Civil Complaint, that I have read the
Complaint and know its contents, and that the facts stated therein are true and correct
to the best of my knowledge.

__/s/_____

REBECCA PETERSON

SUBSCRIBED AND SWORN TO before me this 24th day of April, 2007.

__/s/_____

Jerri Lynne Beeman
Notary Public for Idaho
Residing at Meridian, Idaho
Commission Expires: 9/11/09

CIVIL COMPLAINT - 17