# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| REBECCA PETERSON, | ) | |
| | ) | Case No. CV-07-188-S-LMB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITIFINANCIAL MORTGAGE CO., INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Currently pending before the Court are Defendant CashCall, Inc.'s Motion for Judgment on the Pleadings (Docket No. 13) and Defendant Citimortgage, Inc.'s Motion for Judgment on the Pleadings (Docket No. 15).  Because of the nature of the two pending motions, the record before the court is restricted to the allegations contained in the pleadings.  Having carefully reviewed the record, considered oral arguments of counsel, and otherwise being fully advised, the following Order is entered.

## I.

## FACTS

### A.    **Parties**

Plaintiff Rebecca Peterson is a resident of Boise, Idaho.  *Complaint*, ¶ 9 (Docket No. 1). Sometime prior to August 2004, Plaintiff obtained a home mortgage loan through Ameriquest Mortgage ("Ameriquest").  *Id.* at ¶ 12.  In August 2004, Ameriquest sold Plaintiff's loan to Defendant Citifinancial Mortgage Company, Inc., a New York corporation.  *Id.* at ¶¶ 10, 13; *Citimortgage, Inc. Answer*, ¶ 11 (Docket No. 6).  In July 2006, Defendant Citifinancial Mortgage

**Order – 1**

Company, Inc. merged into Defendant Citimortgage, Inc., also a New York corporation. *Citimortgage, Inc. Answer*, ¶ 11 (Docket No. 6).[1]

In early 2006, Plaintiff fell behind on her monthly payments to Citifinancial.  *Complaint*, ¶ 14 (Docket No. 1).  In order to cure the delinquency, Plaintiff obtained a short-term loan from CashCall.  *Id.* at ¶ 16.  Plaintiff used the funds from CashCall to bring current her obligation to Citifinancial.  *Id.*

Soon thereafter, Plaintiff became delinquent on both the Citifinancial mortgage and the CashCall loan.  *Id.* at ¶ 18.  Plaintiff then began the process of refinancing her home loan with the intent of paying in full her obligations to Citifinancial and CashCall.  *Id.* at ¶ 19.

**B.      Efforts to Obtain Mortgage Information from Citifinancial**

In September 2006, Plaintiff contacted Citifinancial on at least four separate occasions and requested the payoff amount and payment history on her Citifinancial loan.  *Id.* at ¶ 20. Each time she made a request, Citifinancial told Plaintiff that she would be charged $15.00; a faxed response would take 24-48 hours; and a mailed response would take five to seven days. *Id.* at ¶ 21.  On each of these occasions, Plaintiff requested that Citifinancial fax its response to a fax number belonging to Bill Turner ("Turner") at Home Mortgages Resources, the mortgage broker with whom Plaintiff was working to refinance her home loan.  *Id*. at ¶ 22.

It is alleged that Citifinancial did not respond to Plaintiff's requests for information.  *Id.* at ¶ 24.  During Plaintiff's final call to Citifinancial on September 22, 2006, an individual from

---

[1]  Plaintiff refers to Citifinancial Mortgage Company, Inc. and Citimortgage collectively as "Citifinancial." Where appropriate, the Court will do the same.

**Order – 2**

Citifinancial told Plaintiff that Citifinancial would refuse any payment it received from her.  *Id.* at ¶ 25.

Turner also contacted Citifinancial on at least two occasions in an attempt to obtain valid and accurate payoff information for Plaintiff's loan.  *Id.* at ¶ 31.  Plaintiff alleges that Citifinancial did not provide Turner with the requested information.  *Id.* at ¶ 32.

**C.     Efforts to Obtain Loan Information from CashCall**

During this same time period, Plaintiff alleges she separately contacted CashCall on at least five separate occasions and requested the payoff amount on her CashCall loan.  *Id.* at ¶ 26.  Plaintiff also alleges that she sent CashCall an e-mail requesting payoff information.  *Id.* at ¶ 28.  CashCall did not respond to Plaintiff's requests.  *Id.* at ¶ 27.

At some point in this process, Plaintiff provided CashCall with Turner's contact information, including his fax number, and requested that CashCall send the requested information directly to Turner.  *Id.* at ¶ 28.  Turner also contacted CashCall directly on numerous occasions to obtain payoff information on Plaintiff's loan.  *Id.* at ¶ 33.  CashCall did not send the requested information to Turner but eventually provided the payoff amount to Turner during a phone call initiated by CashCall on October 2, 2006.  *Id.* at ¶¶ 29, 34, 41.

**D.     Telephone Contacts from Citifinancial and CashCall**

Plaintiff received a number of telephone calls from Citifinancial, which Plaintiff alleges were made solely to harass and inflict abuse upon her.  *Id.* at ¶ 56.  Many of these calls were received by Plaintiff before 8:00 a.m. and after 9:00 p.m.  *Id.* at ¶ 58.  Plaintiff repeatedly stated that she was aware of the delinquency and was intending to refinance the loan.  *Id.* at ¶ 57.

**Order – 3**

On September 27, 2006, attorney Kelly Beeman ("Beeman") contacted Citifinancial by telephone and letter and informed Citifinancial that he represented Plaintiff. *Id.* at ¶ 60. In mid-October 2006, Plaintiff and/or her son also informed CashCall that Plaintiff was represented by Beeman and directed CashCall that all further contact be made through Beeman. *Id.* at ¶ 61. Nevertheless, it is alleged that both Citifinancial and CashCall continued to contact Plaintiff directly. *Id.* at ¶¶ 63-64.

**E.    Payment of Loans**

Stewart Title handled the closing of Plaintiff's refinance loan. *Id*. at ¶ 34. Citifinancial provided Stewart Title with the loan payoff information for the Citifinancial loan. *Id.* at ¶¶ 37-38. On October 4, 2006, Stewart Title closed Plaintiff's refinance loan and sent to Citifinancial the funds necessary to pay off Plaintiff's loan. *Id.* at ¶¶ 45-46.[2]

**F.    Post-Payment Contact**

Citifinancial issued a statement on October 5, 2006, indicating that Plaintiff's loan had been "paid in full" and cashed the payoff check twenty days later. *Id.* at ¶¶ 47-48, 50. Nonetheless, on October 5, 2006, Citifinancial executed a "Notice of Default and Election to Sell Under Deed of Trust," subsequently recorded on October 6, 2006. *Id.* at ¶ 51. In addition, on October 18, 2006, Citifinancial contacted Plaintiff through a "Wire Alert" stating that the mortgage was "past due." *Id.* at ¶ 52. Also on October 18, 2006, Citifinancial executed a Notice of Trustee's Sale indicating that Plaintiff was in default on her loan and a sale would take place on February 16, 2007. *Id.* at ¶ 53. Plaintiff then received: (1) eight separate Notices of Trustee's

---

[2] Although not directly alleged in the *Complaint*, it appears that Stewart Title also paid off the CashCall loan.

**Order – 4**

Sale, each postmarked October 19, 2006; (2) three postcards titled "Notice of HUD Rights;" (3) a letter from Argent Mortgage stating that it was authorized to offer Plaintiff a "Special New Payment Financing Program;" and (4) an "Information Pack" regarding Plaintiff's upcoming foreclosure from an individual identified as "Dave Schumaker, Trustee." *Id.* at ¶¶ 54-55.

## II.

## PROCEDURAL HISTORY

On April 24, 2007, Plaintiff filed a Complaint against Citifinancial and CashCall. (Docket No. 1). Plaintiff's claims include four separate violations of the Fair Debt Collections Practices Act ("FDCPA" or the "Act") and state law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and slander of title.[3] *Id.*

Citifinancial and CashCall each filed Answers to the Complaint (Docket Nos. 6, 7) and Motions for Judgement on the Pleadings (Docket Nos. 13, 15). Both Defendants argue that Plaintiff's FDCPA claims should be dismissed, because neither party is a "debt collector" within the meaning of the Act. Defendants further argue that the Court may exercise its supplemental jurisdiction over the state law claims and dismiss those as well for failure to state a claim. Alternatively, the Defendants ask the Court to remand the remaining state claims.

## III.

## ANALYSIS

**A.     Jurisdiction**

Plaintiff alleges that this Court has federal question jurisdiction over the FDCPA claims pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. *Complaint*, ¶ 1 (Docket No. 10).

---

[3] The slander of title claim is asserted solely against Citifinancial.

**Order – 5**

Plaintiff further alleges that this Court has supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.  *Id.* at ¶ 2.

**B.      Standard of Review**

Pursuant to Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion to dismiss is "functionally identical" to a Rule 12(b) motion, and the standard of review is the same.  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Thus, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

When analyzing a motion to dismiss under Rule 12(c), the Court must accept as true the material allegations contained in the non-moving party's pleading and construe the pleadings in the light most favorable to that party.  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to a judgment as a matter of law." *Id.*

Nevertheless, the Court does not necessarily "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), *cert. denied*, 454 U.S. 1031(1981).  Further, where the facts alleged in the pleadings can only lead to one conclusion, and that conclusion provides an absolute defense to plaintiff's claims, then dismissal is appropriate.  *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783, n.1 (9th Cir. 1997).  "If the pleadings establish facts compelling a

**Order – 6**

decision one way, that is as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts."  *Id.*

Finally, when deciding a motion for judgment on the pleadings, the Court must consider the "liberal system of notice pleading" set forth in the Federal Rules of Civil Procedure.  *See Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1036 (9th Cir. 2006) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)).  Pursuant to Rule 8(a), a complaint must contain: (1) a statement of jurisdiction, (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for judgment for the relief the pleader seeks."  Fed. R. Civ. P. 8(a).  "A claimant's 'short and plain' statement need only give 'the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Walsh*, 471 F.3d at 1036 (citing *Conley v. Gibson*, 355 U.S. at 47).

It is with all of these principles of law in mind that the pending motions will be addressed and considered.

## C.     Defendants' Motions for Judgment on the Pleadings

To succeed on her FDCPA claims, Plaintiff must demonstrate that CashCall and Citifinancial are "debt collectors" within the meaning of the Act.[4]  The FDCPA defines the term "debt collector" as follows:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due

---

[4]  Plaintiff alleges that Defendants violated the following statutory provisions: 15 U.S.C. §§ 1692c, 1692d, 1692e, and 1692f.  Each applies only to "debt collectors."

**Order – 7**

or asserted to be owed or due another.  Notwithstanding the exclusion provided
by clause (F) of the last sentence of this paragraph, the term includes any creditor
who, in the process of collecting his own debts, uses any name other than his own
which would indicate that a third person is collecting or attempting to collect such
debts. For the purpose of section 1692f(6) of this title, such term also includes any
person who uses any instrumentality of interstate commerce or the mails in any
business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).  Thus, the Act defines four categories of debt collectors: (1) persons

involved in a business with the principal purpose of collecting debts; (2) persons who regularly

collect or attempt to collect on debts owed another; (3) creditors who use a different name in the

process of collecting their own debt; and (4) for the limited purpose of 15 U.S.C. § 1692f(6),

persons involved in a business with the principal purpose of enforcing security interests.

The Act also specifically excludes certain categories of persons or entities from the

definition of "debt collector."  The relevant exclusions include: (1) "any officer or employee of a

creditor while, in the name of the creditor, collecting debts for such creditor," 15 U.S.C.

§ 1692a(6)(A); (2) any person collecting or attempting to collect "a debt which was originated

by such person," 15 U.S.C. § 1692a(6)(F)(ii); and (3) any person collecting or attempting to

collect on "a debt that was not in default at the time it was obtained by such person," 15 U.S.C. §

1692a(6)(F)(iii).  The latter two of these exclusions, set forth in 15 U.S.C. § 1692a(6)(F),

generally fall into the category of "creditors," a term separately defined in the Act as "any person

who offers or extends credit creating a debt or to whom a debt is owed, but such term does not

include any person to the extent that he receives an assignment or transfer of a debt in default

solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).

The statute does not contain an explicit exclusion to the term "debt collector" applicable

to all creditors.  Nonetheless, a number of courts have treated the categories of debtor and

**Order – 8**

creditor as mutually exclusive.  *See, e.g., Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534,

536 (7th Cir. 2003) (holding "[f]or purposes of applying the Act to a particular debt, these two

categories - debt collectors and creditors - are mutually exclusive"); *Perry v. Stewart Title Co.*,

756 F.2d 1197, 1208 (5th Cir. 1985) (holding that "[t]he legislative history indicates

conclusively that a debt collector does not include the consumer's creditors"); *KPMG Peat

Marwick v. Texas Commerce Bank*, 976 F. Supp. 623, 632 (S.D. Tex. 1997) (holding creditor's

conduct on own behalf cannot subject it to liability under FDCPA.  The reason behind the

distinction between debtors and creditors is that creditors, unlike third party debt collectors,

"generally are restrained by the desire to protect their good will when collecting past due

accounts."  *Schlosser*, 323 F.3d at 536 (citing S. Rep. 95-382, at 2 (1977)).

1.      **CashCall as Debt Collector**

Based on the pleadings and applying the legal principles set forth in Section III(B) above,

CashCall is not a debt collector within the meaning of the Act.  While Plaintiff alleges that

CashCall is a "debt collector" under the FDCPA, *see Complaint* ¶ 67 (Docket No. 1), the

remaining allegations in the Complaint directly contradict this conclusion.

Plaintiff alleges that she "obtained a short term loan from CashCall in the amount of

$2,500.00."  *Complaint*, ¶ 16 (Docket No. 1).  Additional allegations regarding CashCall include

Plaintiff's numerous attempts to obtain accurate pay-off information, *Id.* at ¶¶ 25-30, that an

individual from CashCall contacted Mr. Turner with regard to Plaintiff's loan, *Id.* at ¶ 39, and

that Plaintiff was contacted by CashCall on numerous occasions when she became delinquent on

the loan, *Id.* at ¶¶ 61-62, 64.

Based on Plaintiff's allegations, CashCall fits squarely within a statutory exception to the definition of "debt collector" applicable to entities collecting or attempting to collect a debt which was originated by the entity. *See* 15 U.S.C.A. § 1692a(6)(F)(ii). Because Plaintiff alleges that CashCall's actions were made and taken in its own name and for the purpose of collecting on a loan originated by it, CashCall cannot be deemed to be a "debt collector" under the Act. Therefore, the FDCPA claims made against CashCall must be dismissed.

**2.      Citifinancial as a Debt Collector**

Plaintiff alleges that Citifinancial is a debt collector under the FDCPA. *Complaint* ¶ 67 (Docket No. 1). As discussed more fully below, there are no allegations in the pleadings that would preclude such a conclusion. Therefore, Citifinancial's Motion for Judgment on the Pleadings (Docket No. 15) must be denied at this stage in the proceedings as the Complaint meets the federal courts' liberal notice pleading standards. *See* Fed.R.Civ.P. 8(a).

First, there are no allegations in the pleadings that would preclude the conclusion that Citifinancial falls within a category of "debt collectors" set forth in the Act. *See* 15 U.S.C. § 1692a(6). Because the pleadings do not address the business purpose of Citimortgage, Inc., the pleadings do not establish that Citimortgage, Inc. is not involved in "any business the principal purpose of which is the collection of any debts" or does not regularly collect "directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Similarly, based on a careful review of the pleadings, it cannot be determined that Citimortgage, Inc. is not involved "in any business the principal purpose of which is the enforcement of security interests." *Id.*

**Order – 10**

Second, it is not clear from the face of the pleadings that any of the statutory exclusions to the term "debt collector" apply.  In general, Citifinancial argues that it cannot be deemed a "debt collector" under the Act, because the pleadings clearly establish that Citifinancial was a creditor collecting its own debt.  *Citifinancial's Memorandum in Support of Motion for Judgment on the Pleadings*, p. 5 (Docket No. 15-2).  However, while the statute in general treats creditors and debt collectors differently, there is no explicit statutory exception excluding all creditors from the definition of "debt collector" or otherwise excluding creditors from the Act. Therefore, it is insufficient to argue that the Act does not apply simply because Citifinancial is a creditor.

Citifinancial also argues that it falls within the exception to the definition of "debt collector" for "any officer of employee of a creditor."  15 U.S.C. § 1692a(6)(A).  By its own terms, this statutory exception is limited to the officers and employees of a creditor and does not apply to the creditor itself.  Given this clear statutory language and in light of the remedial nature of the FDCPA, *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002)), this Court will decline Citifinancial's invitation to read this exception any more broadly than is written in the Act.

Citifinancial also argues that it is not a "debt collector" under the Act, because it falls within 15 U.S.C. § 1692a(6)(F)(iii), an exception to the definition of "debt collector" for creditors collecting on a debt that was not in default at the time it was obtained.  *Citifinancial's Memorandum in Support of Motion for Judgment on the Pleadings*, p. 5 (Docket No. 15-2). Nonetheless, while Citifinancial Mortgage Company, Inc. obtained the loan from Ameriquest in

**Order – 11**

August 2004, prior to default, *Complaint*, ¶¶ 13-14 (Docket No. 1), Citimortgage, Inc. did not

"obtain" the loan until July 2006 when it merged with Citifinancial Mortgage Company, Inc.,

*Citifinancial Answer*, ¶ 11 (Docket No. 6).  At that time, Plaintiff had fallen behind on her

payments.  *Complaint*, ¶ 14 (Docket No. 1).  Thus, reading such allegations in the light most

favorable to the non-moving party and applying the legal standards set forth in part III(B) above,

it cannot be held as a matter of law that Citifinancial fits within 15 U.S.C. § 1692a(6)(F)(iii),

since Citimortgage, Inc. appears to have obtained the loan through its merger with Citifinancial

Mortgage Company, Inc. at a time when the loan was in default.

Because the pleadings do not contradict Plaintiff's allegation that Citimortgage, Inc. is a

"debt collector" for the purposes of the FDCPA, Plaintiff's FDCPA claims against Citimortgage,

Inc. will not be dismissed at this time.

### 3.        Foreclosing on a Trust Deed

Plaintiff's fourth claim for relief alleges that Citifinancial violated 15 U.S.C. § 1692f by:

(1) attempting to collect unauthorized interest, fees, charges and/or expenses and (2) taking

and/or threatening to take the nonjudicial action of foreclosure without the present right to do so.

*Complaint*, ¶¶ 90-91 (Docket No. 1).

The FDCPA prohibits a debt collector from using "unfair or unconscionable means to

collect or attempt to collect any debt."  15 U.S.C. § 1692f.  Such unfair or unconscionable

activity includes, in part, collecting unauthorized interest, fees, charges or expenses, 15 U.S.C.

§ 1692f(1); and "[t]aking or threatening to take any nonjudicial action to effect dispossession or

disablement of property if . . . there is no present right to possession of the property claimed as

collateral through an enforceable security interest," 15 U.S.C. § 1692f(6)(A).

Order – 12

Citifinancial argues that Plaintiff's fourth claim for relief should be dismissed, because actions taken to foreclose on a trust deed are not actionable under the FDCPA.  *Citifinancial's Memorandum in Support of Motion for Judgment on the Pleadings*, p. 6 (Docket No. 15-2). Relying on *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp. 2d 1188 (D. Or. 2002), Citifinancial argues that foreclosure of a trust deed is not an enforcement of an obligation to pay money and therefore does not constitute debt collection activity.  *Id.*

> The *Hulse* decision states:
>
> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money.  The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor.  But, foreclosing on a trust deed is an entirely different path.  Payment of funds is not the objection of foreclosing on the interest in property.
>
> An important point here is that with a trust deed, the trustee possesses the power of sale which may be exercised after a breach of the obligation for which the transfer in trust of the interest in real property is security.  O.R.S. 86.710. Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

*Id.* at 1204.  Other courts in accord with *Hulse* include: *Fong v. Professional Foreclosure Corp.*, 2005 WL 3134059 (W.D. Wash. 2005); *Miller v. N.W. Trustee Serv. Corp.*, 2005 WL 1711131 (E.D. Wash. 2005); *Barbanti v. Quail Loan Serv. Corp.*, 2007 WL 26775 (E.D. Wash. 2007); *Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716 (W.D. Va 1998).

In supplemental briefing ordered by the Court, *See* Docket No. 30, Citifinancial contends that the policy reason to exclude trust deed foreclosure from the FDCPA is that trust deed foreclosure is traditionally a state-regulated arena.  *Citifinancial's Supplemental Memorandum in Support of Motion for Judgment on the Pleadings*, p. 5 (Docket No. 33).  As Citifinancial correctly states, trust deed foreclosure actions are subject to extensive state statutory control.

**Order – 13**

*See* Idaho Code §§ 45-1502-1515.  Citifinancial argues that the FDCPA, creates rights for the

debtor/mortgagor that are inconsistent with this law.  *Citifinancial's Supplemental Memorandum*

*in Support of Motion for Judgment on the Pleadings*, p. 5 (Docket No. 33).  Citifinancial further

argues that the Court should interpret the FDCPA to exclude trust deed foreclosure, because

"there is no evidence that Congress intended the FDCPA to intrude into state non-judicial

foreclosure law."  *Id.* at 4.

 Nonetheless, there is a split in authority on this issue.  *See Wilson v. Draper & Goldberg,*

*P.L.L.C.*, 443 F.3d 373 (2006); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3rd Cir.

2005); *In re Martinez*, 311 F.3d 1272 (11th Cir. 2002).  After a careful study and analysis of the

respective legal authorities, this line of cases is more persuasive and more in line with the text

and spirit of the FDCPA.

 In order for the FDCPA to apply, there must be a "debt collector" and a "debt."  *Wilson*

*v. Draper & Goldberg, P.L.L.C.*, 443 F.3d at 375.  The FDCPA defines a "debt" as "any

obligation or alleged obligation of a consumer to pay money arising out of a transaction in which

the money, property, insurance or services which are the subject of the transaction are primarily

for personal, family, or household purposes."  15 U.S.C. § 1692a(5).

 Applying this statutory definition, this Court, in accord with *Wilson,* concludes that a

deed of trust, secured by a note payable, constitutes a "debt" under the Act, as it reflects an

obligation to pay arising out of a transaction involving property.  *See Wilson*, 443 F.3d at 376.

Further, this debt remains a debt even after foreclosure proceedings have commenced and

"Defendants' [alleged] actions surrounding the foreclosure proceeding were attempts to collect

that debt."  *Id.*

**Order – 14**

The Court finds this position most persuasive for three central reasons.  First, there is no stated exception to the FDCPA applicable to trust deed foreclosures in either the statutory definition of "debt" or the statutory prohibition applicable to taking nonjudicial action to effect dispossession of property without a right to do so, 15 U.S.C. § 1692f(6)(F).  Second, from a practical standpoint, foreclosure is simply a means of collecting an underlying debt.  Third, including non-judicial foreclosure in the category of debt collection activity does not expand the reach of the FDCPA but applies the act as it is written.  Further, the Act was intended "to eliminate abusive debt collection practices," 15 U.S.C. § 1692(e), and in response to existing laws and procedures "inadequate to protect consumers," 15 U.S.C. § 1692(b).  In light of these remedial purposes, the Court declines to read an exception into the Act that is not clearly set forth in the statutory text.  Accordingly, Citifinancial's motion for judgment on the pleadings is denied with reference to Plaintiff's fourth claim.

**D.      Remaining State Law Claims**

Although CashCall is not subject to the FDCPA, the Court will nevertheless exercise its supplemental jurisdiction over the state law claims against both Defendants in order to promote judicial efficiency.  The law is well-settled that a federal court may decline to exercise supplemental jurisdiction over a claim if "the claim raises novel or complex issues of state law" or "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367.  Here, the state claims asserted against CashCall could be remanded, because, the Court has determined that the FDCPA does not apply to CashCall in these circumstances.  Nonetheless, the Court will exercise supplemental jurisdiction over CashCall as well as Citifinancial's state claims, because it retains original jurisdiction over Citifinancial and concludes that it would be

**Order – 15**

more efficient and less expensive for all parties to resolve the entire dispute in one forum.

Moreover, there are no novel questions of law that require state court attention.

### 1.     Intentional Infliction of Emotional Distress

To sustain a claim for intentional infliction of emotional distress, Plaintiff must establish:

(1) extreme and outrageous conduct coupled with (2) severe emotional distress.  *Waltson v.*

*Monumental Life Ins.*, 129 Idaho 211, 219, 923 P.2d 456, 464 (1996).  Plaintiff need not

demonstrate a physical manifestation of injury.  *Id.*

To meet the requirement of "extreme and outrageous," the defendant's conduct must be

more than unjustifiable and "rise to the level of 'atrocious' and 'beyond all possible bounds of

decency.'"  *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 180, 75 P.3d 733, 741

(2003).  Determining whether conduct is sufficiently "extreme and outrageous" to meet the legal

standard requires a factual determination.  As the Idaho Court of Appeals recently summarized:

> The outrageousness that will justify liability under this tort is illustrated in a
> number of Idaho cases, including *Walston,* 129 Idaho 211, 923 P.2d 456
> (insurance company's unfair dealings with a grieving widower); *Curtis v. Firth,*
> 123 Idaho 598, 850 P.2d 749 (1993) (prolonged physical, mental, and sexual
> abuse); *Gill v. Brown,* 107 Idaho 1137, 695 P.2d 1276 (Ct.App.1985) (recklessly
> shooting and killing a donkey that was both a pet and a pack animal); *Spence,* 126
> Idaho 763, 890 P.2d 714 (real estate developers swindling a family out of their
> "life long dream").  By contrast, in some cases where conduct was arguably
> unjustifiable, it was nevertheless held not to be sufficiently outrageous or extreme
> for liability, *e.g., Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 801 P.2d 37
> (1990) (loss of corpse was not extreme or outrageous); *Hatfield,* 100 Idaho at
> 850-51, 606 P.2d at 954-55 (auctioneer's sale of equipment at "ruinous" price
> below minimum set by seller, and issuance of multi-payee settlement check that
> caused intra-family conflict); *Payne,* 136 Idaho 303, 32 P.3d 695 (belligerent
> yelling of profanities in presence of a child after an automobile accident).

*Alderson v. Bonner*, 142 Idaho 733, 740, 132 P.3d 1261, 1268 (Ct. App. 2006)

In the instant action, Plaintiff alleges that CashCall did not provide requested information and contacted her directly after she asked CashCall to contact her through her attorney. *Complaint*, ¶¶ 26-30, 33-34, 39-42, 61-62, 64 (Docket No. 1).  The alleged conduct is not sufficiently "atrocious" or "beyond the bounds of decency" to sustain a claim of intentional infliction of emotional distress against CashCall.  Therefore, the intentional infliction of emotional distress claim against CashCall should be dismissed on the pleadings.

In contrast, Plaintiff's allegations against Citifinancial are considerably more extreme. Plaintiff alleges that Citifinancial did not provided information that was reasonably requested, called at unreasonable hours, contacted her after she informed Citifinancial that she was represented by counsel, told her that Citifinancial would refuse to accept a payout payment from her, and began foreclosure proceedings against her after she had fully paid the loan.  *Complaint*, ¶¶ 20-25, 30-32, 49-58 (Docket 1).  At this stage in the proceedings, the Court cannot conclusively establish that such conduct would not meet an "extreme and outrageous" standard.

Furthermore, Plaintiff has pleaded that she suffered "severe emotional distress" as a result of Citifinancial's conduct.  *Id.* at ¶ 95.  To prove a severely disabling emotional condition, Plaintiff ultimately must demonstrate something more than being "upset, embarrassed, angered, bothered and depressed."  *Walston v. Monumental Life Insurance*, 129 Idaho at 219, 923 P.2d at 464 (citing *Davis v. Gage*, 106 Idaho 735, 741, 682 P.2d 1282, 1288 (Ct. App. 1984), *appeal after remand*, 109 Idaho 1029, 712 P.2d 730 (Ct.App. 1985)).  There is nothing in the pleadings that would preclude Plaintiff from meeting this standard.  Therefore, judgment on the pleadings is not appropriate with regard to Plaintiff's claim of severe emotional distress against Citifinancial.

**Order – 17**

### 2.      Negligent Infliction of Emotional Distress

The tort of negligent infliction of emotional distress requires a showing of physical

injury.  *Waltson v. Monumental Life Insurance*, 129 Idaho at 219, 923 P.2d at 464 (1996).

Plaintiff has alleged physical injuries resulting from her emotional distress, including: insomnia,

stress-related headaches, and increased blood pressure.  *Complaint*, ¶ 97 (Docket No. 1).

Nonetheless, Defendants argue that the claim should be dismissed, because "Idaho law

does not recognize a claim for negligent infliction of emotional distress in a commercial setting."

*CashCall's Memorandum in Support of Motion for Judgment on the Pleadings*, p. 12 (Docket

No. 13-2); s*ee also Citifinancial's Memorandum in Support of Motion for Judgment on the*

*Pleadings*, p. 9 (Docket No. 15-2).  While it is true that "[i]n Idaho, plaintiffs may not recover

for emotional distress in breach of contract cases, . . . punitive damages may be appropriate if the

defendant's conduct is sufficiently egregious."  *Thomas v. Medical Center Physicians, P.A.*, 138

Idaho 200, 61 P.3d 557 (2002).  Moreover, "a claim for infliction of emotional distress is not

prohibited any time a breach of contract is involved."  *Id.*  Rather, "[i]n order for the plaintiff to

state a claim for infliction of emotional distress, the conduct complained of must arise

independently of the breach of contract claim."  *Id.*  Thus, in order to succeed on such a claim,

Plaintiff must demonstrate a legal duty independent from the contract relationship.  *See Nation v.*

*State, Dept. of Corr.*, 144 Idaho 177, 181, 158 P.3d 953, 967 (2007).

Plaintiff does not allege a special duty arising between the parties sufficient to support

her negligent infliction of emotional distress claim.  Therefore, this claim will be dismissed

without prejudice as it applies to both CashCall and Citifinancial.

Order – 18

### 3.      Slander of Title

Plaintiff alleges slander of title against Citifinancial alone.  *Complaint*, ¶ 98-102 (Docket No. 1).  A claim for slander of title requires proof of  "(1) publication of a slanderous statement; (2) its falsity; (3) malice; and (4) special damages."  *Hogg v. Wolske*, 142 Idaho 549, 556, 130 P.3d 1087, 1094 (2006).  "[S]pecial damages must be alleged and proven before one can recover for slander of title."  *Rayl v. Shull Enterprises, Inc.*, 108 Idaho 524, 530, 700 P.2d 567, 573 (1984).  "In slander of title cases, '[t]he chief characteristic of special damages is a realized loss.'"  *Maragos v. Union Oil Co. of California*, 584 N.W.2d 850, 852 (N.D. 1998) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 128, at 971 n. 3 (5th ed. 1984)).  Thus, to succeed on a claim, a plaintiff must offer reliable data sufficient to determine damages without resorting to speculation or conjecture.  *Maragas*, 584 N.W.2d at 852.

Relying on the *Rayl* decision, Citifinancial argues that Plaintiff's claim fails, because special damages for slander of title must include actual pecuniary damages along with the attorneys' fees and costs incurred in removing the slander.  *Citifinancial's Memorandum in Support of Motion for Judgment on the Pleadings*, pp. 10-11 (Docket No. 1) (citing *Rayl*, 108 Idaho at 530, 700 P.2d at 573 (1984)).  However, *Rayl* holds that attorneys' fees and costs may be considered in determining special damages; it did not mean to provide an exhaustive list of what must constitute special damages associated with a slander of title claim.  As also noted in *Rayl*, "[P]laintiff must prove actual pecuniary damage, and proof of attorneys' fees and other costs of a quiet title suit to remove the slander are such pecuniary damages."  *Rayl*, 108 Idaho at 530, 700 P.2d at 573 (citing *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 611 P.2d 119, 1124

(App. 1980)).  Other damages, too, may be considered special damages, presuming they would not have occurred but for the slander of title.  *See id.*

   Here, Plaintiff alleges the following damages associated with the slander of title claim: "extreme emotional distress, insomnia, stress-related headaches, increased blood pressure, and loss of reputation."  *Complaint*, ¶ 16 (Docket No. 1).  While these allegations alone do not constitute special damages, these physical and emotional damages could feasibly lead to medical expenses actually incurred, an identifiable pecuniary loss.  Plaintiff also indicates that she hired an attorney to help with her refinance and, ostensibly, the foreclosure issues.  *Id.* at ¶ 60-61. Again, this conduct could feasibly lead to identifiable pecuniary losses.  Thus, reading these allegations in a light most favorable to the Plaintiff as required at this stage in the proceedings, Defendant's Motion for Judgment on the Pleadings will be denied as it relates to the slander of title claim as it is not clear from the face of the pleadings that Plaintiff cannot succeed on the claim.

## IV.

## CONCLUSION

   As set out above, Defendant CashCall's Motion for Judgment on the Pleadings (Docket No. 13) is granted in its entirety and all claims against CashCall are dismissed with prejudice. This includes both the FDCPA and state law claims.

   Defendant Citifinancial's Motion for Judgment on the Pleadings (Docket No. 15) is denied in part and granted in part.  Citifinancial's motion is granted only to the extent that the claim of negligent infliction of emotional distress asserted against it is dismissed without prejudice.

**Order – 20**

## V.

## ORDER

THEREFORE IT IS HEREBY ORDERED as follows:

(1) Defendant CashCall's Motion for Judgment on the Pleadings (Docket No. 13) is

GRANTED.  Accordingly, all claims against CashCall are DISMISSED with prejudice.

(3)  Defendant Citifinancial's Motion for Judgment on the Pleadings (Docket No. 15) is

GRANTED in part and DENIED in part as provided in this Order.

DATED:  **November 21, 2007**.



Honorable Larry M. Boyle
U. S. Magistrate Judge

**Order – 21**